Good morning. Today, Thursday, May 16, 2013, our first case on the call, the docket is agenda number four, case number 114271, Evanston Insurance Company v. George E. Riseborough. Counsel for the appellant, please proceed. May it please the Court, my name is Terry Weissman on behalf of the appellants George Riseborough, Reed Jacobson, and Jacobson and Riseborough. This case is here pursuant to an order of the Court allowing appellants petition for leave to appeal. The disputed issue here actually arises from a personal injury action commenced against an entity known as Kieferbaum Construction Company. The appellant, Jacobson and Riseborough, was retained as Kieferbaum's defense counsel. During the course of that injury action, a coverage dispute arose between Kieferbaum's various insurers, including appellee Evanston Insurance Company, resulting in the filing of a declaratory judgment action regarding coverage. On October 23, 2000, 13 years ago, an agreement known as the Fund and Fight Agreement was executed by the various insurers and Jacobson and Riseborough on behalf of Kieferbaum as their counsel. Pursuant to that agreement, the injury case was funded and settled, and the insurers and Kieferbaum were left free to fight amongst themselves as to who was required to pay. During the course of the declaratory judgment action, however, Kieferbaum asserted in December 1993, I'm sorry, December 2003, that it was not bound by the Fund and Fight Agreement because appellants, its lawyers, lacked its specific authority to execute that agreement. As a result of Kieferbaum's position, Evanston filed this action against the Jacobson and Riseborough defendants, asserting claims for breach of implied warranty of authority, fraudulent misrepresentation, and negligent misrepresentation. Each of those claims was based entirely upon Kieferbaum's assertion, its mere assertion, that appellants allegedly lacked the authority to execute the Fund and Fight Agreement. At the time of that filing of that lawsuit, the declaratory judgment action was still pending between Evanston and Kieferbaum, and there had been no decision as to whether or not to proceed. Accordingly, we moved to dismiss Evanston's claims here on the ground that each failed to state a cause of action because Evanston had not yet incurred an injury, any legally cognizable injury, and thus its claims were premature. The circuit court agreed and dismissed the claims without prejudice. Evanston then continued to prosecute its coverage claims in a declaratory judgment action. Finally, in December 2009, Evanston finally lost all of its claims against Kieferbaum. After it lost its claims against Kieferbaum, three weeks later, Evanston filed a second amended complaint in this action against the appellants, repeating the very same claims that it had raised before based upon the alleged unauthorized execution of the Fund and Fight Agreement back in October of 2000. We moved again to dismiss, this time on the ground that the six-year statute of repose governing claims against attorneys barred Evanston's claims based upon the acts of the Jacobson and Riceboro defendants nine years earlier, back in October of 2000. The circuit court agreed with us and dismissed the second amended complaint with prejudice this time based upon the expiration of the statute of repose. Evanston appealed. It argued principally that the statute of repose governing attorneys did not apply to it because Evanston was not a client of the appellants. On November 11, 2011, pursuant to a Rule 23 order, the appellate court reversed, holding that the statute of repose here, quote, contemplates an attorney-client relationship and is not applicable to a suit by a non-client against an attorney in the performance of professional services, end quote. The central issue on this appeal thus involves the review of an appellate court ruling which read in certain limitations to the application of the statute of repose governing attorneys which nowhere appear in the statute's language or in its legislative history. Specifically, the statute of repose here, which is found in Section 13214.3 BNC of the Illinois Code of Civil Procedure, provides in relevant part, very simply, that an action for damage is based on tort, contract, or professional services may not be commenced in any event more than six years after the date on which the act or omission occurred. The circuit court found that pursuant to the plain language and unambiguous language of the statute of repose, it applies to all claims arising out of an act or omission by an attorney in the performance of his or her professional services. On appeal, however, the appellate court failed to apply this plain language. Instead, in its Rule 23 order, it reversed the circuit court and held that the statute only applies to claims by clients for legal malpractice, two limitations being added to the statute. That is, it can only apply to claims by clients and claims by clients that are for legal malpractice. We respectfully submit that nothing in the statutory language or its legislative history supports these limitations. Nowhere does the statute expressly state that it only applies to clients for claims for legal malpractice. In fact, the word client and legal malpractice do not even appear anywhere in the statute. If the legislature wanted these limitations imposed upon the application of the statute of repose upon the statute of repose which governs attorneys, it could have expressly said as much. Does the language for professional services provide any limitation? Yes, Your Honor, it does. And the limitation it provides is a characterization of the type of services being rendered. They must be professional services. If in fact the plaintiff is a client, is that a factor that might lead one to conclude one way or another whether or not it's professional services? Sure. But it's not the sole determinative factor. Here, what the appellate court did was say if it's not a client, you're out. It doesn't matter what he did. Even if it's filing a complaint, even if it's putting a lien on title, it doesn't matter what the lawyer did. If the plaintiff isn't a client, we find it not to be professional services. So a lawyer like myself might go and file a lien on behalf of client A. Non-client B might find that offensive and find something wrong about what I just did and sue me. But is it not professional services that I just rendered for my client when I put a lien on the title of a house? So it's a limitation. It's a limitation which is characterized by the nature of the act. We submit that it was not the role of the appellate court to judicially read in these kinds of limitations to the statute's application. As written and enacted by the legislature, the statute plainly applies to any claim against an attorney that arises from an act or omission in the performance of professional services. As I said, it is thus the nature of the act or omission by the attorney that determines whether the statute of repose apply. The question to be asked by the courts in deciding whether or not to apply the statute of repose is whether the act or omission before it was one taken in the performance of professional services by the attorney. Here there is no dispute that the Jacobson and Riceboro defendants were acting in their professional capacity as attorneys when they executed the fund and fight agreement. Evanston alleges that they were attorneys. Evanston alleges that they were defense counsel for Kieferbaum in the injury action. And Evanston, in fact, alleges that they executed the fund and fight agreement as attorneys for Kieferbaum. Whether or not the plaintiff is a client may have some bearing, as I said, but it's not a determinative fact. As this Court has repeatedly held, where the statutory language is clear, as here, effects should be given to the statute's plain language. In Belfield v. Cooper and other cases, courts are simply not permitted to rewrite statutes by reading exceptions, limitations, or conditions into it that the legislature did not express. And we've said that in Heinrich v. Liberty High School as well as Kraft v. Edgar. In fact, similar attempts to read in limiting language not enacted by the legislature in drafting statute proposed have been rejected by this Court as well as the appellate courts. In the case of Polsky v. BDO Seidman, an appellate court out of the Second District, the plaintiff was a former employee of a company called Indec. He alleged that an outside accounting firm to whom he was not a client, BDO Seidman, participated in Indec's wrongful termination of his employment and alleged claims against it for tortious interference, fraud, and conspiracy, not the legal accounting malpractice. BDO Seidman moved to dismiss based on the statute of limitations governing claims against accountants, which uses language nearly identical to the statutory language at issue here. As here, the plaintiff contended that the statute's use of the phrase in the performance of professional services indicates that it only applied to professional malpractice claims. The First District disagreed, stating, and I quote, we can discern nothing in the language of the statute which even hints at such a limitation. Rather, by its plain words, the statute applies to actions based on tort, contract, or otherwise arising from acts of omissions in the performance of professional services, very close to the language we have here. This, the court went on, this is broad language. If the legislature had intended to limit the applicability of the statute to professional malpractice actions, it could have simply said that. It did not do so. We should not impose, under the guise of statutory construction, limitations that are inconsistent with the plain meaning of from this court. This court held that the statute proposed applicable to medical professionals. Again, a statute which uses very similar language to the statute at issue applied to claims for contribution by a hospital against a treating physician. In doing so, the court broadened the statute proposed to the hospital's contribution claim when it could have simply said if Evanston's position was to be, it was law, that it's only applied, that it would only apply to direct actions by patients. It did not do so and broadened it to contribution claim. In Peterson versus Wallach, this court made clear that in applying the very statute at issue, the court said, quote, not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. In support of this I'm sorry. The court did, in fact, go straight to the issue and said, right in its opening paragraph, I believe, that the only issue before it was whether or not section D. So this issue wasn't resolved there? No, no. Of course. And I wasn't suggesting as much, Your Honor. What I'm saying is that the court did not go straight to the statute. What I was suggesting was the court's philosophy towards courts interpreting statutes beyond its plain meaning to add things or make exceptions. In support of their argument here today, they cite only one state court decision. It's called Gansey versus Blauvelt from the Fourth District, a 1998 decision. And they claim that, quote, Gansey held that section 13-214.3 is limited to legal malpractice actions. That's a plaintiff's brief at page 15. We respectfully submit that Evanston has significantly overstated the holding in Gansey. In Gansey, the focus of the court was whether the attorney's actions constituted professional services and not on whether non-clients or clients can assert the statute of repose. Specifically, the Gansey court found that the statute of repose did not apply because the third-party complaint against the attorney did not set, quote, did not set forth a failure of the attorney's professional duty to Blauvelt, but rather conduct on the attorney's part whereby he shared culpability for the injuries to the plaintiffs. So what the court was telling us was that the services that were being challenged were not professional services, and therefore, the statute of repose does not apply. In any event, Gansey never expressly holds, as Evanston states, that the statute of repose is limited to claims by clients for legal malpractice or that the statute of repose could not apply to claims by a non-client. It's not in that opinion. As for the three federal district court cases cited by Evanston, the Cotton case, the Bova case, and the Wilburn case, we respectfully submit that they were wrongly decided in the wake of Gansey. First, they gave an overly expansive reading to Gansey and followed it as the only of Illinois appellate court decision on the issue. Second, these trial court decisions ignored the plain, broad language of the statute. Indeed, the district court in Cotton even went so far as to assert that the statute, quote, specifies that there is a defendant and a plaintiff. We submit that the statute has no such language requiring a professional relationship between the plaintiff and the defendant and that the Cotton court was misguided in that regard. Third, in any event, as we pointed out in our brief, each of these cases involved allegations of misconduct by the attorney, such as conspiracy, fraud, violation of the Consumer Fraud Act, whereby they were seeking to aggrandize themselves in doing intentional misconduct in injuring the plaintiff. These things cannot be fairly characterized as professional services. Moreover, the interpretation that Evanston asks that this court adopt limiting the application of the statute of repose to only claims by clients for legal malpractice, we believe will have a significant adverse impact on public policy. Under Evanston's interpretation, a non-client will have five years from the discovery of a claim to sue an attorney. So if he discovers that there's something wrong with his house insurance 15 years from now, he's going to have 20 years from the closing to bring that suit. Essentially, a non-client would have an unlimited limitations period with no repose period cutting off or extinguishing the claim, while the attorney's own client would have only a two-year limitations period and a six-year statute of repose, which would extinguish a claim after six years from the act or occurrence. Moreover, if claims by non-clients are excluded from the statute of repose, attorneys, particularly retiring attorneys who are looking out to how long they should get insurance for, will be subject to the possibility of such claims without any certainty that there will be a definitive date in the future when they know they can no longer be sued. Getting a six-year tail coverage from an insurance company will not do it for you if a non-client sues you and says we didn't discover it until year seven, year 15, year 20, and we have five years to We submit that the uniform application of the statute of limitations and repose periods to clients and non-clients alike would help avoid the possibility of such stale claims by non-clients. Although evidence suggests that these are rare phantom concerns that we're raising, there's an extensive body of cases dealing with issues arising from claims by non-clients against attorneys. And I think that extensive body of cases belies the argument. Just by way of example, there's Pelham v. Griesheimer, Schott v. Glover, Salome v. Interpol, Thornberry v. Board of Education, just to name a few of the many cases that deal with the issues that arise when a non-client brings an action against an attorney. If there's no statute of repose involved, no statute of limitations that is the same as the, that apply to clients, those claims will be able to be asserted well into the future. Evanson tries to argue that because it initially filed this action within six years of the execution of the fund and fight agreement, because its complaints were dismissed without prejudice, that on the ground that they were premature, it is not now barred by the statute of repose as its case somehow remained pending. The argument is misplaced. Basically, with regard to its relation back and it remained pending argument, what Evanston is saying is, well, we'll file, I know what we'll do, we're worried about the statute of repose, we'll file a legally insufficient claim. It'll get dismissed. If, in fact, if it turns out that the underlying claim is not cited until after the statute of repose requires, we'll argue that it relates back or that it remained pending or it should have been stayed, all of the different things that they want to do to try to save the claim. Statute of repose doesn't work that way. Statute of repose extinguishes the claim. If it hasn't accrued yet, you get dismissed for prematurity. If you have an alleged damage, you get dismissed because you haven't stated its cause of action. And if it turns out you're damaged after the statute of repose expires, that's the way it works. Statute of repose extinguishes the claim. It's a legislative determination that after a certain point in time, you will not be able to bring the suit. Finally, just a quick mention, I see my time is running out. Evanston finally makes an argument at length in its brief that the breach of implied warranty of authority claim was accrued when it learned that Kieferbaum was taking the position that the lawyers did not have authority. We submit that the accrual argument misses the point. All of its claims for damages against the defendants here were dismissed because they did not and could not allege a legally cognizable injury until such time as Evanston lost its claims against Kieferbaum. Whether they accrued or not, they still needed to have an injury in order to sue for damages, which is what they're suing for. So they were dismissed because one of the elements of their own claim did not yet accrue, did not yet occur, and therefore the case was not legally sufficient. We further submit that the cases they rely upon for this purpose do not apply. I see my time is up. For each of the reasons we sent forth in our brief and stated here today, we ask that the case be reversed. What's the connection, if any, between this case and the appellate court case, Kieferbaum Construction Company versus Tesler and Rosenberg? I believe, and it's been so long since I thought about that, that that is a case that arises out of the covered dispute, if I'm not mistaken. I don't believe that has any direct relationship to their claims against the Jacobson and Riceboro defendants. Kieferbaum is in this case as well? No, they're not. George Riceboro is in this case? I'm sorry? George Riceboro. Yeah, George Riceboro, Reed Jacobson, and Jacobson and Riceboro. And what this case is, is a case by a non-client, Evanston, who signed the fund-and-fide agreement with us. By us, I mean the Jacobson and Riceboro defendants who signed for Kieferbaum. There's no question of attorney-client relationship in that case? There's no question that the attorney-client relationship existed between the Jacobson and Riceboro defendants and Kieferbaum. If there's no further questions, I thank the Court for its time. Good morning. May it please the Court, Counsel, my name is Joe Marconi and I represent the plaintiff in this case. Mr. Marconi, can you lift up that? Okay, there you go. I represent the plaintiff in this case and the appellee. And in reading the briefs last night, I think one point, one very strong and obvious point, was not made in any of the briefs. And I invite the Court to look at page C-97 of the brief, where George Riceboro signs the fund-and-fide agreement. And right below his signature it says, he's signing as the duly authorized agent and representative of Kieferbaum. So it's not an implied warranty anymore, or an implied representation. This is an active representation of fact which was incorrect. And Mr. Riceboro, inasmuch, admitted that in his deposition and we cite to that record. So then the question becomes, is there a public policy reason to protect him under the attorney-client statute of limitations? And I say, there is not. And probably the primary reason there shouldn't be. Excuse me. Mr. Marconi, do we, before we can get to public policy, right, we have to look at plain language. Is there anything in the plain language when we're talking about the actual mission and the performance of professional services? That's the operative clause, right? Well, is signing a document in which you have no authority and representing that you have authority to a third party, is that professional services? And there's cases that say that is not, that does not qualify as, and I'm referring to, there's five different opinions. And one by the fourth district, one by the first district, and three by federal district courts that all say professional services require a duty, a duty to a client. Is it an oversimplification to say that your position is that that clause refers to, you look at who was receiving the attorney's professional services when the injury occurred and opposing counsel's position as was the attorney performing professional services when the injury occurred, right? Is that the bulk of the discussion? I think that states the issue. I think that states the issue. But, you know, going to the public policy reasons, I mean, if I may, where do you draw the line? I mean, where do you say, you know, there's cases out there that say that there's certain things that a lawyer does on behalf of his client. I mean, we can come up with, lawyers are being sued by their opponents more often now than before. One example is in a defamation case. There's been a trend to file defamation cases against your opponent's lawyer. Now, that's a one-year statute. Should that statute be expanded to two years? I mean, where do you, there's malicious prosecution cases, there's intentional interference cases. Where do you draw the line? Where does the lawyer cross the line where it's not professional services anymore? I mean, you can take that professional services idea broadly and any time it has anything tangentially to do with a client, then that statute applies. Well, how do you address opposing counsel's argument that the legislature could have easily put in on behalf of their client and chose not to do so? Well, I think he, well, the legislative intent, I think Judge Guzman's opinion talks about the legislative intent, and I think Gansey somewhat refers to it, and I think the basis for his argument is Polsky, okay? He talks about Polsky, and that's the only decision that interprets it that way, and they distinguish the legislative intent. But, you know, Polsky I don't think is relevant because it's a certified public accountant, and there are a number of cases in Illinois and other states where a third party can sue a public accountant. A public accountant has duties that go beyond his client. You know, it's not necessarily an adversarial relationship. Here we have an adversarial relationship, and, you know, I think a reasonable interpretation of the language against an attorney arising out of an act or a mission in the performance of professional services means professional services to a client. Because that's where the, I mean, Mr. Reisborough did not provide professional services to Evanston Insurance Company, okay? Granted, he was in the process of providing those to his client, but this is a cause of action by Evanston against him. So that the action doesn't arise out of an act or a mission in the performance of professional services. It arises out of an act or a mission being, the act being, intentional misrepresentation to Evanston. Mr. Weissman started by saying the appellate court placed two limitations on application of the statute of repose. It has to be a client. It has to be legal malpractice. Would the same actions by these attorneys in signing the document, if their client were suing them for saying they had no authority to do that, would that be professional services under the act? I believe so. Could be and could not. So then the focus, is the focus on whether it's a client relationship? I think the focus is on the client relationship, and I think the focus is on who's making the claim, and in which directions the fiduciary duties run. I mean, that's what, there's five different courts now. I mean, there's three fourth district judges, three first district judges, and three federal court judges that have interpreted the statute that way. And there's none that I've come across that interpret it the way Appellant wants it interpreted. I mean, his strongest case is the Polsky case, but as I pointed out, it's a different, a whole different type of professional with different duties. A certified public accountant has certain duties to the public in general when it issues reports and audits and financial statements that don't apply. And I think it's a question of duty. I think that's the issue. You have a duty to your client, and this statute of limitations is intended to apply to that. And I think... Did you say there is legislative history that specifically supports your argument? Justice Guzman, or Judge Guzman, in his opinion, refers to it. We have not referred to it in any of our briefs or pulled it, but a couple of the cases that are cited talk about it, that it has to do with legal malpractice. It has to do with malpractice actions. But, you know, as this Court knows, you don't go to legislative history unless there's an ambiguity in the statute. Here the courts have, the courts that I've just mentioned have said there's no ambiguity here. It applies to professional services. And they said that in determining what professional services are, look to duty. Where does that lawyer's duty, where do they run? Runs to the client. I just have a question. Your opponent raised some issues about retiring attorneys and their concerns about insurance. After they retire, they're no longer in practice. Who knows what's going to happen in the future? Can I just ask a real basic question here? In this case, would these lawyers' malpractice insurance cover this claim? Probably. Their legal malpractice policy might cover this claim. If it was a negligent in nature, probably. If it was an intentional tort, probably not. But you're asking me for an opinion that I haven't really researched. But I think they probably would. But that's a different contract. And every policy is different. I think they cover, for example, the defamation claims I'm talking about. But they do so under a reservation. If I can move on. Before you move on, Mr. Marconi, I'm going back to my first question. I understand you're citing other cases. I understand your position. You don't see any reading into the statute whatsoever. If plain language is the first thing this Court has to look at, right, with respect to interpreting a statute, just the words actor omission and performance of professional services, without thinking about public policy, without knowing anything about whether or not there's coverage, non-coverage, the whole legal landscape, those words, do we not have to read into those words that it only is between a lawyer and his client? You don't dispute that they were performing a legal act of sorts, right? It's the who that you have the problem with. Who were they doing it for? So I'm just trying to focus in on the language right now. Okay. Well, again, it's arising out of an actor omission in the performance of legal services. Okay. And the claim that's arising out of that act here is a representation to a third party. So with respect to Evanston Insurance Company, it is not the performance of legal services. That's where I draw the line. And I think Justice Salone put it succinctly when he says a plaintiff cannot bring suit against an attorney in the performance of their professional services unless there was an attorney-client relationship in which the defendant owed a duty to the complaining party. I mean, I think that's the operative language in the appellate court case in this action. May I ask a question about the complaint in this case? Yes. What are the causes of action that we're talking about here? Breach of warranty, active misrepresentation, negligent misrepresentation. And that was before we took Mr. Riseborough's death where he admitted he never talked to anyone to get any authority and that he didn't have any authority. You look like you're going to ask another question. Again, I'm trying to tie it back into what is professional services. What were they accused of doing here? This is not a fiduciary duty kind of problem? Not to Evanston. That's the whole point. That's the whole point of professional services. A professional has fiduciary duty in the execution of its services, but not to Evanston, not to this plaintiff. It's an interesting question, I know. Moving on a second. Okay. Even if you agree with the appellant with respect to the interpretation of the statute, I would refer you to an opinion written by Justice Freeman on a case I think that Judge Warren Wilson had at the trial level, Joe and Dan. I think it's very important to read that case. And this goes to the issue of whether or not the cause of action against the agent is right. The lawsuit proceeded against both the principal and the agent. Now, if appellant was correct, that couldn't happen. You'd have to sue the principal first. But that's not the law. There's no case that says in a case where you're questioning the authority of an agent that you have to sue the principal first and lose that case. When we filed the lawsuit at the very beginning of the case, we said that he signed that without authority because Kiefer Baum had told us that. And that cause of action is right at that point. Did we suffer damages? Of course we did. We settled the case for $600,000 and statewide, who was the other obligor under the fund and fight agreement, went bankrupt. We lost that $600,000. We lost, we had damages. There's no question about that. Now, you're probably asking why weren't these tried together? We tried to put them together. If you look at the record, we moved to consolidate. The presiding judge of the law, we filed these things in a rush. The presiding judge of the law division transferred it to Chancery, but didn't consolidate the cases. They were before Judge Billick. Kiefer Baum was already a party to the coverage action, so Judge Billick had the coverage action, and we first had to get the ruling on coverage before we could determine whether or not we had the cause of action against Kiefer Baum. So now we're in Chancery, and the appellant here took a change. So since it was a money damage case, it goes back to law division. It's not consolidated now, even though we tried. It was assigned to Judge Goldberg. Again, we filed a motion to consolidate, you know, that these two claims should be tried together. They're alternative claims. And again, Joe and Dan, if you read Joe and Dan, there's five or six cases cited in Joe and Dan where the cases were tried together. Appellant objected. The cases were not consolidated. I mean, that's what happened. That does not mean that the claim against the agent was not right. We could have sued the agent only. We didn't have to sue the principal. If that would have been an issue, if the agent had a problem with that, they could have third-partied in the principal. There's no obligation to sue the principal first. They can't cite one case. What they're doing is they're using legal malpractice cases as an analogy. In legal malpractice cases, the underlying case has to get resolved before you can sue the lawyer because there's no damage. They're trying to use that as an analogy to say that the case wasn't right here. But that's not the law in Illinois. So even if you find that the statute should be applied as the appellant thinks, the trial court committed error by dismissing the case from the get-go. And then when the trial court thought it was right, years later, applying the statute of repulse. That case continued. I mean, the trial court continued to dismiss the case without prejudice. In one of the orders, I think it was in 2008, the trial court said, you can come back and amend once the underlying case is resolved. It's in the order, I think it's the order of November 10, 2008. He said, plaintiff can replead after the underlying case has been decided. That's the quote from the trial court. So the court kept jurisdiction that whole time. If the case is right when we filed it, there's no reason to apply the statute of repulse because it was filed within the six-year period. Now, there's a couple of footnotes that talk about the statute of limitations, the two-year statute of limitations, but that wasn't litigated. That was never litigated. So in any event, the trial court should be reversed. We think that it should be reversed and that the statute of limitations for attorneys should not be applied. But even if you do apply the statute of limitations as to attorneys, the case should be reversed because the trial court committed error under the case of Joe and Dan International, and I urge you to read that case and see how often, I mean, it cites the four or five different principal and agent cases regarding authority, and in each case the agent was sued at the same time as the principal. And with that, I've got two minutes left and I'm not going to use them. Is that all right with you? Thank you very much for your attention. Thank you, Mr. Marconi. I want to touch on a few things that was raised by some of the questions and some things that were raised by Mr. Marconi. With regard to what statute of limitations would apply, and he says this basically opens the door to, and you don't know where it's going to stop. The law is clear that the more specific statute of limitations applies to any particular claim. So if we have a statute that specifically governs attorneys, which we do, that's going to be the statute of limitations and repose that's going to apply to claims against attorneys. That's why the legislature drafted a statute entitled attorneys. That's why it drafted a statute of limitations and repose that's entitled accountants. So whatever the claim is, as it says in the statutory language, in tort, based in tort, based in contract, or otherwise. So if it is a defamation claim, I respectfully submit that we would be applying this very statute of repose. My colleague reminds me, in response to Justice Freeman's question about the Tressler case, that that was a statute of limitations dismissal against these very, by the client, keep her bound against these attorneys. Interesting point to be drawn from that is that in that case, the very statute at issue was applied. The court did agree, as it's obviously agreed here, that these were professional services being rendered. Is there a case that you reference on page 17, footnote 6? This was an action against the same defendants. I believe so. It included others as well, I believe. And the circuit court determined that the statute applied and the appellate court affirmed. Correct. So wasn't the plaintiff, Kiefenbaum, suing its attorney for whom it claimed it had an attorney-client relationship with? Correct. That is true. Wouldn't that actually support the plaintiff's position? No, I believe it would actually support our position. No one here disputes that we had a plaintiff, I mean we had an attorney-client relationship with Kiefenbaum. No one is suggesting otherwise. What I'm suggesting is the application of that statute in that case suggests very strongly that the court recognized that our acts were professional services, so therefore triggered the application of that statute. With regard to Mr. Marconi's references to the counting statute, the reason why that statute is something the court should look to, it is a very closely drafted, it's very analogous, it's very similar in the language that is used, so the Polsky case becomes highly relevant in that regard. With regard to Justice Garmon's question about the legislative history, I note that Polsky referenced the legislative history that was being cited by one of the parties and basically said, even read most favorably to the plaintiff's position, the legislative history doesn't support the limitations that the plaintiff was asking for, and you'll see that in the Polsky opinion. As far as Joe and Dan is concerned, that case, there was an actual injury by the insured. They had lost their building to a fire and it was already injured, so its claims against anybody connected with that were ripe. And also the teaching that I think can be drawn from Joe and Dan is that you can't sue two people simultaneously for the same damage. Basically what happened in Joe and Dan is they sued the insurance agent and the insurance company, a verdict came in against both of them, went up on appeal, and the appellate court said these are inconsistent. Well, that's exactly what they're doing here, or tried to do. They're trying to sue both Kieferbaum on the fund and fight agreement and us separately in this action against the attorneys, simultaneously seeking recoveries twice. So if there's anything to be drawn from Joe and Dan, it's that you can't go both routes at the same time. Finally, he made mention to a deposition of George Rice, but I just want to point out that that deposition was not taken in this proceeding, and we disagree with his characterization of the testimony. I'll leave it at that. Mr. Weisman, what about, he also, Mr. Marconi also mentioned that at the time of the initial dismissal that was dismissed without prejudice, even if we agree with your position, I think somehow somewhat of a relating back argument that it was filed within the six years. That, as I understood the argument, that the judge was wrong on the whole rightness issue. They filed it within the six years. It was dismissed. They retained jurisdiction and refiled. I think the argument was made that even if we agree with your position, that we should somehow relate it back to that complaint. First of all, on whether it relates back, the Court dismissed the earlier complaints because it did not allege all the elements necessary for a legally sufficient claim. One of the elements being damages, injury, because these were claims for damages. And it says there's no damages here until you lose against Kieferbaum. So the reason for its dismissal was that the complaint was legally insufficient and thus premature until such time as it loses. You cannot relate back, and I think the cases are clear, you can't relate back to a case that doesn't exist. It was dismissed in the period before the statute of repose expires. You could then amend and say I'm here, I've got a damage, I'm ready to pursue a legally sufficient claim, but that didn't happen. Second, if what they're saying were to be applied, a plaintiff could file a case the day his lawyer tells him, let's take the Lucy case. I'm not sure if the Court's familiar with it. But in Lucy, a broker received advice, a stockbroker received advice from a lawyer that he could, he didn't have to pay attention to his restrictive covenants. He could go compete against his former employer. He gets sued by the former employer when he leaves. He then seeks to sue his lawyer, but hasn't lost yet, against his former employer who sued him. The Court basically says we do not approve of placeholder provisional actions being filed so that you can then later argue it relates back or it was dismissed without prejudice if the statute of repose ultimately expires. So what their argument would encourage is it would encourage lawyers to file legally insufficient claims because there's no injury yet, and if the injury occurs after the statute of repose, come back and argue statute of repose, I relate back, it was without prejudice, and therefore I'm timely. Basically we would be undermining the entire statute of repose. Every lawyer would do that. They would say I'm not only going to sue the defendant, but I'm also going to sue your former lawyer just in case we lose against that statute of repose. So that's the argument that they would encourage. Is this last argument of yours premised on this being a legal malpractice or a professional services act that was done? Or is that in any case? I would think that would be true in any case, that you shouldn't be able to sue somebody that you know you don't have a claim against yet just so you could later say you were a professional. Thank you. Case number 114271, Evanston Insurance Company v. George E. Riceboro, taken under advisement as agenda number 4. Mr. Weissman, Mr. McConey, thank you for your arguments today.